## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Zachary MacBride, Jibril Rouag, and Nadia Rouag, | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |
| Plaintiffs, | : | |
| | : | Civil Action No.: 1:26-cv-09288 |
| v. | : | |
| | : | |
| Voorhees Township, Joseph Del Palazzo, | : | |
| Michael Marchitto and Voorhees Police Officer | : | |
| John Does 1-10, individually and as police | : | |
| officers for the Voorhees Township Police | : | |
| Department | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiffs, Zachary MacBride, Jibril Rouag, and Nadia Rouag, ("Plaintiffs"), by and through their attorneys, Grant & Eisenhofer P.A., assert the following complaint against Defendants, Voorhees Township, Defendant Officers Del Palazzo and Marchitto and Voorhees Police Officer John Does 1-10, individually and as police officers for the Voorhees Township Police Department, and in support thereof, aver as follows:

## INTRODUCTION

1.      On August 31, 2024, at around 8:40 p.m., Voorhees Township Police Department Officers Joseph Del Palazzo and Michael Marchitto executed a traffic stop of a red Chevrolet Corvette driven by Rafik Ghazal at a gas station on Haddonfield-Berlin Road. The officers had not witnessed Mr. Ghazal commit a traffic offense or any other suspected crime and had initiated the stop because the license plate number had been reported stolen five days earlier to the Berlin Township Police.

2.      Officer Del Palazzo followed Mr. Ghazal into a gas station, activating his lights as his patrol car turned in behind Mr. Ghazal.  Mr. Ghazal complied with the traffic stop, pulling into the gas station and coming to a stop.  Officer Del Palazzo pulled his police cruiser behind him.

3.      Officer Del Palazzo got out of his car and immediately escalated the situation, pulling his service weapon and pointing it at the Corvette while shouting commands toward the vehicle. After almost a full minute of this standoff, Officer Marchitto arrived in another Voorhees patrol vehicle, parking behind Officer Del Palazzo. Upon his arrival, Mr. Ghazal drove the car forward, away from the patrol cars, out of the gas station, and back onto the road.

4.      Del Palazzo and Marchitto followed Mr. Ghazal and initiated pursuit, leading to Ghazal and the police reaching high rates of speed.

5.       Despite having ample time from the initiation of the encounter to consider alternative actions that would not have endangered the public, the officers initiated a high-speed pursuit down a busy commercial road on a summer Saturday evening.

6.      At the same time the pursuit was in progress, Plaintiff Zachary MacBride was driving his two cousins, Plaintiffs Jibril Rouag and Nadia Rouag, on White Horse Road in Voorhees Township after a day of family fishing.

7.      Plaintiff MacBride was driving the speed limit through a green light at the intersection of Haddonfield-Berlin Road. Unbeknownst to Plaintiffs, Mr. Ghazal was barreling toward them in a sports car, fleeing from the officers, while all three were driving at a rate of speed well in excess of the posted speed limit.

8.      The pursuit ended in a predictable but avoidable tragedy when Mr. Ghazal, fleeing from the officers, sped through the red light at the intersection, t-boning Plaintiffs' vehicle. The collision was so severe that it tore the engine block of Plaintiff MacBride's car and caused life-

altering injuries to Plaintiffs, who were all hospitalized and had to undergo extensive medical treatment.

9.    The officers who initiated the stop did so on the pretense that the Corvette had been reported stolen. However, at the time they initiated the stop, the Voorhees Township Police Department and the Officer Defendants were in possession of credible evidence that would have led any reasonable police officer to believe the car was not actually stolen but had been reported stolen in connection with an insurance fraud scheme.

10.    The officers also violated a statewide policy that dictates when police officers may engage in vehicular pursuits. The officers' unlawful decision to engage in the high-speed pursuit constituted a state-created danger and a conscious disregard of the great risk to the safety of others, including innocent bystanders like Plaintiffs, who suffered immensely as a result. Accordingly, Plaintiffs bring the instant action to recover damages for the violation of their Constitutional Rights.

## **PARTIES**

11.    Plaintiff, Zachary MacBride, is an adult individual and was at all material times a resident and citizen of New Jersey.

12.    Plaintiff, Jibril Rouag, is an adult individual and was at all material times a resident and citizen of California.

13.    Plaintiff, Nadia Rouag, is an adult individual and was at all material times a resident and citizen of California.

14.    Defendant, Voorhees Township, is a municipality duly organized and existing under the laws of the State of New Jersey. Defendant Voorhees Township is responsible for the

funding, budget, policies, procedures, operation, staffing, training, and oversight of the Voorhees Township Police Department.

15.     Defendant Joseph Del Palazzo is a resident and citizen of New Jersey and was, at all relevant times, a police officer employed by the Voorhees Township Police Department.

16.     Defendant Michael Marchitto is a resident and citizen of New Jersey and, at all relevant times, was a police officer employed by the Voorhees Township Police Department.

17.     Defendants, Voorhees Police Officer John Does 1-10, are fictitiously named Defendants who, at all relevant times, were police officers employed by the Voorhees Township Police Department.

18.     The true names and identities of Defendants, Voorhees Police Officer John Does 1-10, are known to Defendant Voorhees Township, but have been shielded and withheld from Plaintiff and the general public by Defendant Voorhees Township. Plaintiffs intend to amend this Complaint to include their names and identities when same are ascertained.

19.     Defendants, Officers Del Palazzo, Marchitto, and Voorhees Police Officer John Does 1-10, are being sued in their individual capacities as police officers for Defendant Voorhees Township.

## JURISDICTION AND VENUE

20.     Jurisdiction exists in this honorable Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress deprivations of the Fourteenth Amendment rights of Plaintiffs.

21.     Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b)(2) as Defendants' constitutional violations and otherwise violative conduct occurred within the District of New Jersey.

## FACTUAL ALLEGATIONS

### DEFENDANT POLICE OFFICERS ENGAGED IN AN UNLAWFUL HIGH-SPEED PURSUIT THAT CAUSED DEVASTATING INJURIES TO PLAINTIFFS

22.     On August 31, 2024, at approximately 8:40 p.m., Defendant Officer Del Palazzo was driving his police vehicle and following a red 2021 Chevrolet Corvette ("Subject Corvette") driven by Rafik Ghazal in Voorhees Township.

23.     At the time of this accident, Officer Del Palazzo was a newly minted police officer, having graduated from the Gloucester County Police Academy in December 2022.

24.     Chevrolet Corvettes are well known and widely understood by the general public as high-end, high-performance sports cars.

25.     Base-model Corvettes can go from 0 to 60 mph in just over four seconds and 0 to 100 mph in under ten seconds.

26.     While tailing Mr. Ghazal for an unknown period, Officer Del Palazzo conducted a lookup of Corvette's vehicle registration which revealed it was reported stolen out of Berlin Township, New Jersey.

27.     Officer Del Pallazzo contacted Camden County Central Communications which confirmed the Corvette was reported stolen out of Berlin Township.

28.     While Officer Del Palazzo was behind Mr. Ghazal, Mr. Ghazal turned into a Sunoco Gas Station located at 3 Haddonfield-Berlin Road, Voorhees Township, New Jersey 08043 ("Subject Gas Station").

29.     While Mr. Ghazal was in the middle of his turn, Officer Del Palazzo activated his emergency lights to initiate a traffic stop of Mr. Ghazal. Mr. Ghazal complied and pulled up to a pump in the Subject Gas Station.

30.     Officer Del Palazzo did not witness Mr. Ghazal commit any alleged traffic violation or other suspected crime to justify conducting the traffic stop. Officer Del Palazzo initiated the stop solely because of the license plate number being marked as stolen.

31.     Mr. Ghazal slowly drove the Corvette next to a gas pump at the far end of the overhead fuel island canopy and came to a complete stop.

32.     At the time, Mr. Ghazal was allegedly actively suffering from an addiction to methamphetamine and Adderall. When he was pulled over by Officers Del Palazzo and Marchitto, he was under the influence of both drugs.

33.     As a result of his addiction, at the time Mr. Ghazal was allegedly suffering from delusions, including the belief that he was under investigation by the United States Military, that he was a "cyborg," and that he was communicating with religious entities.

34.     At 8:42, Officer Del Palazzo parked his police vehicle behind the Corvette at the opposite end of the overhead canopy.

35.     Officer Del Palazzo exited the vehicle and immediately pulled his service weapon. Standing just outside his patrol car's driver's side door, Officer Del Palazzo pointed his gun at the Corvette. He started shouting multiple, conflicting commands toward the Corvette, including "step out of the car," "put both hands out of the window," and "put your window down."

36.     Officer Del Palazzo did not attempt to approach the vehicle at any point during this interaction. Instead, he stood with his gun pointed at the Corvette for approximately 56 seconds, shouting conflicting commands toward the vehicle.

37.     Mr. Ghazal did not comprehend why Officer Del Palazzo was pointing a gun at him and began panicking.

38.     Officer Del Palazzo never attempted to assess Mr. Ghazal's demeanor and instead escalated the situation by immediately drawing his service weapon and pointing it at Mr. Ghazal.

39.     After nearly a minute of Officer Del Palazzo's escalation, at 8:43 p.m., Officer Michael Marchitto parked his police vehicle with the emergency lights activated directly behind Officer Del Palazzo's vehicle in the Subject Gas Station parking lot.

40.     Mr. Ghazal then began driving forward at a normal speed toward the gas station exit, away from Officers Del Palazzo and Marchitto.

41.     At this point, Officer Del Palazzo had approximately a full minute at the Subject Gas Station, in addition to all the time he spent tailing Mr. Ghazal, to contemplate alternative actions besides initiating a police pursuit of a high-performance sports car down a busy thoroughfare on a summer Saturday.

42.     He was aware that, to this point, the driver of the Corvette had done nothing to suggest he was a threat to public safety. It had been several days since the Corvette was reported stolen, and there was no evidence that it had been used in a manner that posed a threat to public safety.

43.     Officer Del Palazzo stated, "he's running," into his police radio, got back into the driver's seat of his vehicle, and started to follow the Corvette with lights and sirens activated. Officer Marchitto got back into his vehicle and followed them with lights and sirens activated.

44.     After exiting the gas station, Mr. Ghazal drove southbound on Haddonfield-Berlin Road. Officers Del Palazzo, Marchitto, and/or Voorhees Police Officer John Does 1-10 initiated a chase, pursuing Mr. Ghazal at the same high rate of speed down the commercial corridor on a Saturday evening.

45.     Upon information and belief, Officers Del Palazzo and Marchitto were joined by one or more Police Officers, John Does 1-10, in their chase.

46.     Upon information and belief, Officers Del Palazzo and Marchitto and/or Voorhees Police Officer John Does 1-10 pursued Mr. Ghazal at a rate of speed well in excess of the 40 miles-per-hour speed limit on Haddonfield-Berlin Road.

47.     Upon information and belief, Officers Del Palazzo and Marchitto and/or Voorhees Police Officer John Does 1-10 did not inform any of their police supervisors that they were engaged in a vehicular pursuit.

48.     Officers Del Palazzo and Marchitto did not produce a police report for this incident.

49.     Officers Del Palazzo and Marchitto and/or Voorhees Police Officer John Does 1-10 knew or should have known that their intentional high-speed pursuit of Mr. Ghazal was likely to injure innocent bystanders, including any bystanders and/or other individuals in vehicles traveling on Haddonfield-Berlin Road or the intersecting roads.

50.     Officers Del Palazzo and Marchitto and/or Voorhees Police Officer John Does 1-10 also failed to keep their patrol vehicles at an appropriate and safe distance from the Corvette, which increased both Mr. Ghazal's desire to flee and the risk of a catastrophic collision between the Corvette and any other nearby vehicles and/or persons.

51.     Rather than terminate the pursuit, in a conscious disregard of a great risk of harm during the pursuit and contrary to the vehicle pursuit policies that were or should have been promulgated by Defendant Voorhees Township, Officers Del Palazzo and Marchitto, and/or Voorhees Police Officer John Does 1-10 continued to pursue Mr. Ghazal at an unsafe speed down Haddonfield-Berlin Road.

52. While the pursuit was in progress, Plaintiff Zachary MacBride was driving his two cousins, Plaintiffs Jibril Rouag and Nadia Rouag, in his 2012 Honda Civic along White Horse Road after a day of fishing. Plaintiff MacBride drove the speed limit through a green light at the intersection of Haddonfield-Berlin Road.

53. Mr. Ghazal, fleeing from Officers Del Palazzo and Marchitto and/or Voorhees Police Officer John Does 1-10, ran through a red light at the intersection and t-boned Plaintiff MacBride's vehicle.

54. The high-speed pursuit lasted approximately 0.7 miles on Haddonfield-Berlin Road in a mixed-use residential and commercial area.

55. The impact was so severe that it tore the engine block off the Civic and caused the Plaintiffs permanent and severe injuries. All plaintiffs were rushed to Cooper Hospital for immediate treatment.

56. Plaintiff MacBride suffered, among other injuries, a displaced fracture of his right humerus, requiring surgery and hardware. As a result of the break, Plaintiff MacBride lost the ability to use his right hand, was unable to extend his hand at the right wrist and lost manual dexterity of his fingers. While he has enjoyed some improvement, Zach continues to suffer from permanent physical limitations. Zach had intended to work as an EMT and Firefighter at the time of the accident but was delayed from beginning his career for at least six months.

57. Plaintiff Jibril Rouag suffered, among other injuries, a bowel laceration requiring exploratory surgery and, ultimately, surgical resection. After his discharge, he had to be readmitted to the hospital for complications related to his resection, including wound healing and infection and bowel obstruction. He continues to suffer permanent issues with his gastrointestinal function, resulting in malnourishment and weight loss. He sustained extensive scarring and disfigurement

from his surgery. He also sustained a severe concussion with memory impacts. He was sedated and intubated for an extended period in the hospital and sustained a pulmonary contusion. He continues to have lung capacity function issues as a result of the crash injuries. He required knee surgery related to injuries sustained in the impact. There was a follow-up knee surgery in December 2025. Because of these injuries, Jibril has not been able to return to his participation on his semi-professional soccer team.

58.    Plaintiff Nadia Rouag suffered, among other injuries, severe brain injuries, vertebral fractures, and pelvic fractures. Following the crash, she was bedridden, intubated, and was in a medically induced coma for nearly ten days. Cooper physicians drilled into Nadia's skull to place ICP monitors and external ventricular drains. Nadia sustained extensive scarring and disfigurement from a tracheotomy and feeding tubes. Following her four-week stay at Cooper, she underwent six weeks of brain rehabilitation and extensive physical therapy at Magee Rehabilitation. The tracheotomy impacted her ability to speak and sing, preventing Nadia from participating in UCI Choir. Nadia returned home and continued with outpatient physical, speech and cognitive therapy for an additional six months. Nadia also developed double vision as a result of her traumatic brain injury and had eye surgery to correct it in September 2025.

59.    Plaintiffs suffered and continue to suffer from severe personal injuries and have been and continue to be forced to expend significant sums of money in an effort to treat their severe injuries that occurred as a result of the aforementioned collision.

60.    As a result of Plaintiffs' aforementioned injuries that were directly caused by the collision, Plaintiffs suffered and continue to suffer great pain and mental anguish and have and continue to be hindered from attending their normal and usual daily duties, functions, occupations, and education, all to their great detriment and loss.

61.     Plaintiffs' injuries were directly and proximately caused by Officers Del Palazzo and Marchitto and/or Voorhees Police Officer John Does 1-10's high-speed pursuit of Mr. Ghazal, which constituted a conscious disregard of a great risk of harm to innocent bystanders like Plaintiffs.

62.     Officers Del Palazzo and Marchitto and/or Voorhees Police Officer John Does 1-10's decision to conduct a high-speed pursuit was unjustified and unlawful based solely on the aforementioned facts that occurred on August 31, 2024. However, their decision is further unconscionable for two reasons: 1) Officers Del Palazzo and Marchitto, and/or Voorhees Police Officer John Does 1-10 had access to credible information via Berlin Township Police that the Corvette was not actually stolen, and; 2) Officers Del Palazzo and Marchitto, and/or Voorhees Police Officer John Does 1-10's pursuit violated state policies dictating when police officers are permitted to engage in vehicular pursuits.

**DEFENDANT POLICE OFFICERS HAD ACCESS TO CREDIBLE INVESTIGATIVE EVIDENCE THAT THE CORVETTE WAS NOT STOLEN, NEGATING THE REASON FOR THE TRAFFIC STOP**

63.     On August 26, 2024, five days before the collision that injured Plaintiffs, Daniel Hernandez parked his 2021 Chevrolet Corvette outside the Red Barn Book Store located in West Berlin, New Jersey, and entered the store. Mr. Hernandez left his car keys and wallet in the front seat of the vehicle, which he also left unlocked.

64.     While Mr. Hernandez was inside the store, surveillance footage shows Rafik Ghazal entering the parking lot. Mr. Ghazal walked directly to the driver's side of the Corvette and did not approach any other vehicle in the parking lot.

65.     After briefly looking into the driver's side window of the Corvette, Mr. Ghazal opened the door, sat down in the driver's seat, and drove out of the parking lot.

66.     Shortly thereafter, Mr. Hernandez exited the store into the parking lot and then reentered. Mr. Hernandez asked the bookstore owner, Wayne Grasso, whether he or a store employee had moved the Corvette. Mr. Grasso informed him they had not.

67.     Despite his vehicle being missing from the parking lot, Mr. Hernandez proceeded to watch a film in the bookstore's movie theater for approximately two hours.

68.     After being in the bookstore for about two hours and indicating that his car was missing from the parking lot, Mr. Hernandez finally called the Berlin Township Police Department to report it stolen.

69.     Officers with the Berlin Township Police Department arrived at the Red Barn Book Store on August 26, 2024, to investigate the allegedly stolen vehicle. Mr. Grasso showed the investigating officers the surveillance footage. He described the unusual time lapse between Mr. Hernandez's first indication that his car was no longer in the parking lot and his reporting the vehicle stolen to the police. The investigating officers indicated to Mr. Grasso that, based on the available facts, they believed this was likely an insurance fraud scheme.

70.     Upon information and belief, the investigating officers from Berlin Township produced a police report that included all the aforementioned unusual circumstances regarding the reportedly stolen Corvette, as well as their belief that it was likely part of an insurance fraud scheme rather than a legitimately stolen vehicle.

71.     Mr. Hernandez's Corvette was the same vehicle that Mr. Ghazal was driving during the August 31, 2024, pursuit and collision.

72.     Upon information and belief, when Officer Del Palazzo ran the registration of the Corvette on August 31, before initiating the traffic stop of Mr. Ghazal, the aforementioned police report from the Berlin Township officers was made available to Officers Del Palazzo, and Officer

Marchitto had access to it via interdepartmental police databases or communications with Berlin Township.

73.     Officers Del Palazzo and Marchitto, and/or Voorhees Police Officer John Does 1-10 had access to credible police investigative evidence indicating that the Corvette was not actually stolen before initiating the traffic stop of Mr. Ghazal, thereby negating the entire reason for pulling the Corvette over and ultimately engaging in the high-speed pursuit.

74.     Officers Del Palazzo and Marchitto, and/or Voorhees Police Officer John Does 1-10 knew or should have known they had no reasonable basis to believe the Corvette was stolen.

75.     As outlined below, because Officers Del Palazzo and Marchitto, and/or Voorhees Police Officer John Does 1-10 knew or should have known they had no reasonable basis to believe the Corvette was stolen, they had no legal basis to engage in the high-speed pursuit under established New Jersey state policies dictating when vehicular pursuits may be initiated.

### DEFENDANT POLICE OFFICERS VIOLATED ESTABLISHED STATE POLICIES REGARDING USE OF FORCE AND VEHICULAR PURSUITS

76.     The State of New Jersey Attorney General Law Enforcement Directive No. 2022-4 (hereinafter "The Policy") is a statewide policy that governs use-of-force policies for all New Jersey police officers, including officers employed by municipal police departments.

77.     The Policy was enacted by New Jersey Attorney General Matthew J. Platkin on April 29, 2022. It was in full force and effect during the aforementioned pursuit and crash that occurred on August 31, 2024.

78.     The Policy sets out requirements that must be met before New Jersey police officers may deploy a wide range of use-of-force tactics, including when to initiate a vehicular pursuit.

79.     The Policy's second Core Principle notes that "Force shall only be used as a last resort when necessary to accomplish lawful objectives that cannot reasonably be achieved through

verbal commands, critical decision making, tactical deployment, or de-escalation technique." "De-escalation" is defined as "De-escalation refers to the action of communicating verbally or non-verbally in an attempt to reduce, stabilize, or eliminate the immediacy of a threat."

80.     With the Policy's Core Principles in mind, the Policy notes:

The decision to pursue a motor vehicle must be objectively justifiable after giving due consideration to a number of factors. Although impossible to create a policy that addresses every potential scenario, officers and supervisors shall conduct vehicular pursuits only within the parameters outlined in Addendum B of this Policy. Due to the risks to both officers and the public, supervisors are expected to exercise an enhanced level of control over vehicular pursuits.

81.     Section 3 of The Policy specifies the factual circumstances that must be present for a police officer to engage in a vehicular pursuit of a suspect.

82.     Paragraph 3.1 of The Policy provides general parameters and guidelines for police officers regarding whether to engage in a vehicular pursuit of a suspect. That paragraph states that "the officer's decision to pursue should always be undertaken with an awareness of the degree of risk to which the officer exposes law enforcement and the community and by engaging in a vehicular pursuit." [1]

83.     Further, Paragraph 3.2 of The Policy establishes the following pertinent requirements that need to be met in order for an officer to engage in a vehicular pursuit:

A law enforcement officer *may only* pursue under the circumstances described in subparagraph (a) <u>or</u> subparagraph (b)

(a) When the officer *reasonably believes* that the violator has committed, or is engaged in a conspiracy to commit:
…

(3)     one of the following other crimes:

---

[1] https://www.nj.gov/oag/dcj/agguide/directives/ag-Directive-2022-4_Directive-Updating-Statewide-Vehicular-Pursuit-Policy-and-Use-of-Force-Policy.pdf

(b)     Theft of a Motor Vehicle, N.J.S.A. 2C:20-3; N.J.S.A. 2C:20-2(b)(2)(b). [2]

…

(b) when an officer reasonably believes that the violator poses an imminent threat to the safety of the public or other officers. An imminent threat exists when an officer reasonably believes that the actions of the violator are immediately likely to result in death or serious bodily injury to another person absent action by the officer. This determination *shall be made based upon the violator's actions or operation of the vehicle prior to the initiation of the attempted motor vehicle stop. The violator's subsequent actions, including speeding or evasive driving during the pursuit itself, although often supporting the criminal charge of Eluding, N.J.S.A. 2C:29-2(b), shall not constitute an authorization to initiate or continue a pursuit.*

*(Emphasis added).* [3]

84.     None of the conditions mandated by paragraph 3.2 of The Policy were met when Officers Del Palazzo and Marchitto initiated the pursuit of Mr. Ghazal. First, paragraph 3.2(a) was not satisfied because Officers Del Palazzo and Marchitto had access to credible police investigative evidence that indicated the Corvette was not stolen. Therefore, there was no basis for a *reasonable belief* that Mr. Ghazal had committed Theft of a Motor Vehicle. Further, Officers Del Palazzo and Marchitto had not witnessed Mr. Ghazal commit any of the other alleged crimes enumerated in subsection 3.2(a) prior to initiating the traffic stop at the gas station.

85.     Second, paragraph 3.2(b) was not satisfied at the time of the pursuit because Officer Officers Del Palazzo and Marchitto had not witnessed Mr. Ghazal do anything that posed an imminent threat to public safety prior to initiating the traffic stop. Under subsection 3.2(b), Mr.

---

[2] Notably, State of New Jersey Attorney General Law Enforcement Directive No. 2020-13 was enacted on December 21, 2020, and revised the Use of Force Policy to exclude suspected Theft of a Motor Vehicle as a basis for initiating a vehicular pursuit. Law Enforcement Directive No. 2022-4 further revised the policy to once again include Theft of a Motor Vehicle as a basis for initiating a vehicular pursuit.

[3] https://www.nj.gov/oag/dcj/agguide/directives/ag-Directive-2022-4_Directive-Updating-Statewide-Vehicular-Pursuit-Policy-and-Use-of-Force-Policy.pdf

Ghazal's decision to drive out of the gas station was not a justification for engaging the pursuit, because that occurred approximately a full minute after the traffic stop was initiated.

86.    However, even assuming *in arguendo* that the requirements of subsection 3.2 of The Policy were met at the time Officers Del Palazzo and Marchitto initiated the pursuit, their decision to engage in the high-speed chase still violated The Policy.

87.    Paragraph 3.2.1 of The Policy states:

> Pursuit for motor vehicle offenses ***is not authorized*** under Paragraph 3.2 unless the violator's vehicle is being operated so as to pose an imminent threat to the safety of the public or other officers, and that threat is based on the violator's actions or operation of the vehicle ***prior to the initiation of the attempted motor vehicle stop.*** There shall be a strong presumption against the initiation of vehicular pursuits based solely on motor vehicle violations. Both supervisors and officers shall ensure that only in rare cases will a vehicular pursuit be initiated or continued for motor vehicle violations.

> ***(Emphasis added).*** [4]

88.    Officers Del Palazzo and Marchitto violated Paragraph 3.2.1 of The Policy because, once again, they had not witnessed Mr. Ghazal do anything before the initiation of the traffic stop that indicated he posed an imminent threat to public safety.

89.    Further, Officers Del Palazzo and Marchitto had no reasonable belief that Ghazal was a threat to public safety.

90.    Again, ***even assuming these conditions are met***, automatic pursuit is still not authorized. Paragraph 3.3. of the Policy provided that before the officers initiate pursuit, they must also consider:

    a. likelihood of successful apprehension;
    b. whether the identity of the violator is known so that later apprehension is possible;
    c. degree of risk created by pursuit:
        i. volume, type, speed and direction of vehicular traffic;

---

[4] https://www.nj.gov/oag/dcj/agguide/directives/ag-Directive-2022-4_Directive-Updating-Statewide-Vehicular-Pursuit-Policy-and-Use-of-Force-Policy.pdf

      ii.  nature of the area (residential, commercial, school zone, open highway, etc.);

     iii.  population density and volume of pedestrian traffic;

     iv.  environmental factors, such as weather and darkness; and

      v.  road conditions (construction, poor repair, extreme curves, intersections

     vi.  controlled by traffic signals or signs, ice, etc.); and

  d.  police officer characteristics:

      i.  driving skills;

     ii.  familiarity with roads; and

    iii.  condition of police vehicle.

91.    Here, all these factors militated against initiation of the chase. Ghazal was driving a high-speed sports car, which would impede successful apprehension. The car was likewise conspicuous and easy to identify. The pursuit would create extensive risk, since it would be in a high-density residential and commercial area, through areas with traffic control devices. Further, Officer Del Palazzo was very new, having graduated from the Police Academy less than two years prior. The risk of the pursuit under those circumstances was extremely high.

92.    Further, under Paragraph 4.8.2 of The Policy, which outlines additional limitations on vehicular pursuits:

> There shall be a strong presumption against the initiation of vehicular pursuits based solely upon motor vehicle violations. ***Officers involved in vehicular pursuits must immediately notify both the supervisor*** and police communications, state the reason for the pursuit, and provide the information required by Addendum B of this Policy.

*(Emphasis added).* [5]

93.    Upon information and belief, Officers Del Palazzo and Marchitto never notified their supervisor that they were engaging in a vehicular pursuit, therefore violating The Policy.

94.    Finally, under Paragraphs 2.7 and 2.8 of The Policy, which outline best practices for identifying and responding to individuals with mental health issues:

---

[5] https://www.nj.gov/oag/dcj/agguide/directives/ag-Directive-2022-4_Directive-Updating-Statewide-Vehicular-Pursuit-Policy-and-Use-of-Force-Policy.pdf

Officers should consider an individual's mental, physical, developmental, intellectual disability, or other conditions, such as age of the suspect, that affect the person's ability to communicate or comply. This includes, when feasible, considering the following factors related to the individual:

    (a)    behavioral or mental health crisis;

    (b)    drug interaction;
…

    (c)    mental impairment;
…

    (m)    other factors beyond the individual's control.

Whenever an officer determines that one of the above listed factors exists and is influencing the person's failure to comply with an officer's command, when feasible, the officer shall consider whether specific techniques or resources would help resolve the situation without the need to utilize force. Techniques for responding include, but are not limited to, the following:

    (a)    obtaining information about the person from available sources including family members, caregivers or others who know the individual;

    (b)    decreasing exposure to the potential threat by moving to a safer position. This may involve ***creating distance***, seeking cover, tactical repositioning, concealment, and/or placing barriers between an uncooperative person and the officer;

    (c)    ***slowing down the pace of the incident*** by the officer ***slowing their speech***, taking deep breaths, and/or applying strategic and critical thinking;

    (d)    keeping the non-compliant person confined to a limited area and ***calling for a supervisor, back-up officers, and specially-trained resources to assist in resolving the incident. These specially-trained resources may include Crisis Intervention Team-trained officers, behavioral or mental health care providers***, negotiators, qualified bi¬lingual officers, or officers equipped with less-lethal devices;

    (e)    ***using time as a de-escalation strategy***, thereby creating an opportunity to calm the non-compliant person;

(f) *using simplified speech and shorter verbal directions or instructions*;

(g) *eliminating or reducing sensory distractions* (***bright flashing lights, sirens***, or other loud noises); and

(h) any reasonable strategy that lessens the emotional anger, frustration, combativeness of a subject or others who may be present may be appropriate.

(Emphasis added) [6]

95.    Officers Del Palazzo made no efforts to consider whether Mr. Ghazal was experiencing a mental health crisis, suffering from a mental impairment, and/or under the influence of drugs.

96.    Once Mr. Ghazal came to a complete stop at the gas station, Officer Del Palazzo never approached the vehicle, and instead immediately drew his service weapon and shouted multiple, conflicting commands toward Mr. Ghazal.

97.    Officer Del Delazzo continued to point his weapon and shout commands despite Mr. Ghazal not responding during the nearly minute-long standoff.

98.    Officer Del Pelazzo failed to take any actions outlined in Paragraph 2.8 of the Policy to resolve the situation without the need for engaging in the vehicular pursuit. Specifically, Officer Del Pelazzo failed to:

a. Slow down the pace of the incident by attempting to speak to Mr. Ghazal in a calmer and slower tone;

b. Use simplified speech to calm Mr. Ghazal by giving him a single command instead of shouting conflicting directives toward him;

c. Call in specially-trained resources to assist in resolving the incident, such as Crisis Intervention Team-trained officers and/or behavioral or mental health care providers;

---

[6] https://www.nj.gov/oag/dcj/agguide/directives/ag-Directive-2022-4_Directive-Updating-Statewide-Vehicular-Pursuit-Policy-and-Use-of-Force-Policy.pdf

d. Eliminate sensory distractions such as putting away his service weapon or turning off the sirens on his police vehicle;

e. Utilize time in the minute-long standoff to deescalate the situation by taking any of the above actions prior to engaging in the vehicular pursuit.

99.     Officers Del Palazzo and Marchitto knew or should have known they were violating The Policy prior to initiating the aforementioned vehicular pursuit, but intentionally, willfully, recklessly, and/or negligently failed to adhere to The Policy, causing Plaintiffs to sustain the damages set forth herein.

**DEFENDANT VOORHEES TOWNSHIP FAILED TO ADOPT, IMPLEMENT, AND ENFORCE PROPER VEHICLE PURSUIT POLICIES**

100.    The Policy further requires that "[e]very law enforcement and prosecuting agency under the authority of the laws of the State of New Jersey… shall implement or adopt policies consistent with this Use of Force Policy, including the Policy's addenda." [7]

101.    Accordingly, Voorhees Township was required to develop and implement vehicle pursuit policies that encompassed the guidelines and requirements of The Policy above, and reasonably should have had policies that met or exceeded those guidelines and requirements.

102.    Upon information and belief, Voorhees Township negligently failed to adopt such policies, or in the alternative, failed to properly implement and enforce such policies.

103.    Upon information and belief, even if adequate policies were in place, Voorhees Township had a custom and practice of disregarding adopted vehicle pursuit policies. This is evident from, among other things, Officers Del Palazzo and Marchitto's conduct during their pursuit of Mr. Ghazal, which failed to conform to any reasonable pursuit policy and fell far below the standard of care required of police officers involved in a vehicle pursuit.

---

[7] https://www.nj.gov/oag/dcj/agguide/directives/ag-Directive-2022-4_Directive-Updating-Statewide-Vehicular-Pursuit-Policy-and-Use-of-Force-Policy.pdf

104.    Upon information and belief, as evidenced, in part, by Officers Del Palazzo and Marchitto actions and omissions during their pursuit of Mr. Ghazal, although Voorhees Township maintained or should have maintained adequate pursuit policies, Voorhees Township's custom and practice was to consciously disregard, and thus to act with deliberate indifference, the policies they had or should have had in place and to sanction or condone, expressly or implicitly, their respective police officers' violations of the constitutional rights of bystanders when engaging in vehicle pursuits.

105.    Due to Voorhees Township's failure to properly enforce an adequate pursuit policy, or in the alternative, failure to adequately train and/or supervise police officers to ensure that their pursuit policy, if any existed, was properly followed, Plaintiffs sustained the damages set forth herein.

## COUNT I

### 42 U.S.C. §1983 — 14TH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATION: All Plaintiffs Against Officers Del Palazzo and Marchitto and John Does 1-10.

106.    All preceding allegations are incorporated by reference as if fully set forth herein.

107.    Count I is alleged by all Plaintiffs against Officers Del Palazzo and Marchitto, and John Does 1-10.

108.    Officers Del Palazzo and Marchitto initiated an improper vehicle pursuit that lasted for more than a mile, at speeds well in excess of the posted speed limit on a busy road, which pursuit was initiated and continued based solely upon the license plate of the Corvette coming up on a police database as stolen.

109. This improper police pursuit of Mr. Ghazal also occurred during the evening hours when it was dark outside, and on a Saturday, on a holiday weekend, at a time when other motorists were traveling on the same and/or nearby roads in a commercial area.

110. Officers Del Palazzo and Marchitto, and John Does 1-10 knew or should have known that by conducting, continuing, and failing to terminate the improper pursuit of Mr. Ghazal, as well as by failing to intervene to terminate this improper pursuit, the pursuit was certain to cause physical and mental injury to others, including innocent bystanders, including Plaintiffs. Officers Del Palazzo and Marchitto thus intentionally disregarded the risk of these injuries by prioritizing the effort to apprehend the driver of the Escape for mere traffic violations. This decision by Officers Del Palazzo and Marchitto was made even though their conduct could not possibly justify any government interest, much less the apprehension of Mr. Ghazal.

111. The conduct of Officers Del Palazzo, Marchitto, and John Does 1-10 constitutes a state-created danger and is so egregious as to shock the conscience.

112. As a result of the above actions, Officers Del Palazzo, Marchitto, and John Does 1-10 caused Plaintiffs to be deprived of life and/or liberty, and have violated Plaintiffs' clearly established Fourteenth Amendment right under the United States Constitution to substantive due process of law.

## COUNT II

### 42 U.S.C. §1983 — MONELL LIABILITY
### All Plaintiffs Against Defendant Voorhees Township

113. All preceding allegations are incorporated by reference as if fully set forth herein.

114. Count II is alleged by all Plaintiffs against Defendant Voorhees Township.

115.    Defendant Officers Del Palazzo and Marchitto and John Does 1-10 acted under the color of law, and under the authority of one or more interrelated *de facto* policies, practices, and/or customs of Defendant Voorhees Township to violate Plaintiffs' rights as set forth herein.

116.    Before August 31, 2024, it was a *de facto* policy, practice, and/or custom of Defendant Voorhees Township, through its respective police department, chiefs of police, mayors, and borough counsels, to inadequately supervise and train their police officers, including Defendant Officers Del Palazzo and Marchitto and John Does 1-10, concerning adequate vehicle pursuit policies and practices, thereby failing to adequately discourage constitutional violations on the part of their police officers. Upon information and belief, Defendant Voorhees Township did not require appropriate in-service training or re-training of police officers who were known to engage in improper, intentional, willful, reckless, and/or negligent vehicle pursuits.

117.    It was the *de facto* policy, practice, and/or custom of Defendant Voorhees Township, through their respective police department, chiefs of police, mayors, and borough councils, to inadequately supervise and train their police officers, including Defendant Officers Del Palazzo and Marchitto and John Does 1-10, to intervene and/or report constitutional violations and misconduct committed by their fellow police officers.

118.    Defendant Voorhees Township, acting through its respective police department, chiefs of police, mayors, and borough councils, has adopted and continues to maintain a recognized and accepted policy, custom, and/or practice of systematically engaging in dangerous and improper vehicle pursuits, without regard to model and accepted vehicle pursuit policies and guidelines, which conduct has resulted in subjecting other persons, including innocent bystanders like Plaintiffs, to unjustifiable risks of property damage and personal injury.

119.    Defendant Voorhees Township, acting through its respective police department, chiefs of police, mayors, and borough councils, was fully aware of the dangers posed by vehicle pursuits and the resultant need for proper training and supervision of its police officers. Still, Defendant Voorhees Township was deliberately indifferent to those risks and failed to properly train and supervise its police officers regarding those risks.

120.    As a result of the above-described practices, policies, and/or customs, Defendant Voorhees Township's respective police officers, including Officers Del Palazzo and Marchitto and John Does 1-10 believed that their actions would not be properly monitored by supervisory police officers and/or other employees of Defendant Voorhees Township, and that this improper conduct would not be investigated or sanctioned, but would be tolerated and condoned by Defendant Voorhees Township.

121.    As a result of the above actions, Defendant Voorhees Township caused Plaintiffs to be deprived of life and/or liberty and has therefore violated Plaintiffs' Fourteenth Amendment right under the United States Constitution to substantive due process of law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Zachary MacBride, Jibril Rouag, and Nadia Rouag, respectfully request that the Court enter judgment in their favor and against Defendants on all counts of the complaint, and award relief as follows:

A. Compensatory damages against the Defendants, jointly and severally, in an amount to be determined at trial;

B. Punitive damages against the individual Defendant Officer John Does 1 and 2 for their conduct in an amount to be determined at trial, in order that such award will deter similar prohibited behavior by defendants and other law enforcement officers in the future;

C.  Pre-judgment and post-judgment interest and recovery of Plaintiffs' costs, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988 and 42 U.S.C. §1920, against Defendants, jointly and severally; and

D.  Any other relief to which Plaintiffs may be entitled.

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

*/s/ Elizabeth Bailey*
Elizabeth A. Bailey (079972013)
Daniel T. Craig, Esquire (pro hac vice forthcoming)
123 Justison Street
Wilmington, DE 19801
Phone: (302) 622-7000
Fax: (302) 622-7100
ebailey@gelaw.com
dcraig@gelaw.com

*Attorneys for Plaintiffs*